**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

|  |  |  |
|---|---|---|
| JOHN F. SVOBODA AND RITA A. SVOBODA, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CV. NO. SA-12-CV-00484-DAE |
| | ) | |
| BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING LP FOR THE BENEFIT OF J.P.MORGAN ALTERNATIVE LOAN TRUST 2006-S3, ITS SUCCESSORS AND/OR ASSIGNS; RECONTRUST COMPANY, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.; and SECURITY NATIONAL MORTGAGE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**ORDER: (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; (2) DENYING PLAINTIFFS' MOTION FOR SUMMARY
<u>JUDGMENT</u>**

Before the Court is a Motion for Summary Judgment brought by

Defendants Bank of America, N.A., Mortgage Electronic Registration Systems,

Inc., and ReconTrust Company, N.A. (collectively, "Defendants") and a Motion

for Summary Judgment brought by Plaintiffs John F. Svoboda and Rita A.

Svoboda (collectively, "Plaintiffs").  After careful consideration of the memoranda

in support of and in opposition to the motions, the Court, for the reasons that

follow, **GRANTS** Defendants' Motion for Summary Judgment (doc. # 3) and

**DENIES** Plaintiffs' Motion for Summary Judgment (doc. # 23).

BACKGROUND

I.       Factual Background

On May 4, 2006, Plaintiffs obtained a loan in the amount of

$560,000.00 secured by real property located at 10 Mira Loma, New Braunfels,

Texas 78130 (the "Subject Property").  ("MSJ," Doc. # 3, Ex. A-1.)  Plaintiffs

executed both a promissory note (the "Note") and a security instrument (the "Deed

of Trust"), which each list Security National Mortgage Company as the Lender.

(Id. Exs. A-1, A-2.)  The Deed of Trust was recorded in the Official Public

Records of Comal County, Texas and lists Mortgage Electronic Registration

Systems, Inc. ("MERS") as "beneficiary" acting "solely as a nominee for Lender

and Lender's successors and assigns."  (Id. Ex. A-2.)  The Deed of Trust also

provides that "MERS holds only legal title to the interests granted by the Borrower

in this Security instrument" and that "MERS (as nominee for Lender and Lender's

successors and assigns) has the right: to exercise any or all those interests, including . . . the right to foreclose and sell the Property." (Id.)

There is no dispute that, by 2010, Plaintiffs had fallen behind on their mortgage payments. (See id. Exs. A-3, A-4, A-8.) BAC Home Loans Servicing, LP ("BAC Home Loans"), acting as mortgage servicer, modified Plaintiffs' loan effective May 1, 2010. (Id. A-6.) Following the loan modification, Plaintiffs again defaulted on their mortgage. (Id. Exs. A-3, A-4.) On December 23, 2010, BAC Home Loans sent a letter notifying Plaintiffs of the default. (Id. Ex. A-8.)

On May 2, 2011, MERS assigned the Deed of Trust to "BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP." (Id. Ex. A-5.) More specifically, MERS assigned "all beneficial interest under that certain Deed of Trust . . . together with the note(s) and obligations therein described . . . and all rights accrued or to accrue under said Deed of Trust." (Id.) The assignment of the Deed of Trust was recorded in the Official Public Records of Comal County, Texas on May 12, 2011. (Id.) Later that year, Bank of America, N.A. ("Bank of America") became successor by merger to BAC Home Loans. (Id. Exs. A, A-5.)

On December 1, 2011, the Deed of Trust was assigned by BAC Home Loans to Bank of America "for the benefit of JP Morgan Alternative Loan Trust

2006-S3." (Id. Ex. A-7.)  The assignment was recorded in the Official Public Records of Comal County, Texas on March 15, 2012.  (Id.)

As a result of Plaintiffs' default, Bank of America accelerated the loan and initiated foreclosure proceedings on the Subject Property.  (Id. A-9.)  In a letter notifying Plaintiffs of the acceleration, Bank of America explained that it was successor by merger to BAC Home Loans and lists itself as the "Mortgagee" and "Mortgage Servicer."  (Id.)  The January 17, 2012 Notice of Substitute Trustee's Sale for the Subject Property lists Bank of America as the mortgagee of the Note and Deed of Trust as well as the mortgage servicer.  (Id.)

On February 7, 2012, the Subject Property was purchased at auction by Bank of America, "successor by merger to BAC Home Loan Servicing, LP FKA Countrywide Home Loans Servicing, LP, for the benefit of JP Morgan Alternative Loan Trust 2006-S3."  (Id. Ex. A-12.)

II.    Procedural History

On May 1, 2012, Plaintiffs filed suit in the 22nd Judicial District Court of Comal County, Texas against Bank of America, Recontrust Company, N.A., MERS, and Security National Mortgage Company.  (Doc. # 1, Ex. A.)  The state-court petition brings causes of action for wrongful foreclosure and quiet title along with claims for violations of the Texas Property Code, the Texas Business

4

and Commerce Code, and the Texas Debt Collection Act.  (Id.)  Additionally, the petition seeks a temporary injunction, declaratory relief, and attorneys' fees.  (Id.)

Defendants removed the case to this Court on May 16, 2012.  (Doc. # 1.)  On November 12, 2012, Defendants filed a Motion for Summary Judgment. (Doc. # 3.)  Plaintiffs did not timely file any response to Defendants' Motion for Summary Judgment.

Six months later, on May 14, 2013, Plaintiffs filed a Motion for Summary Judgment.  (Doc. # 23.)  Soon thereafter, Defendants filed an Opposition to Plaintiffs' Motion for Summary Judgment (doc. # 24) and a Reply in support of their own Motion for Summary Judgment (doc. # 25).  On May 28, 2013, the Court heard the motions for summary judgment.  (See Doc. # 27.)

On June 9, 2013, Plaintiffs filed an Advisory to the Court, and the Court permitted Defendants to file a Sur-Reply.  (Docs. ## 29–31.)  Defendants also filed a Supplement to the Record on July 2, 2013, and Plaintiffs filed a Response to Defendants' Sur-Reply.  (Docs. ## 32–34.)

STANDARD OF REVIEW

Summary judgment is granted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

5

see also Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012). The main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Id. at 323.  If the moving party meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial. ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).  In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

DISCUSSION

Defendants argue that they are entitled to summary judgment because Plaintiffs have failed to tender the amount of their defaulted debt and because Bank of America had standing to foreclose on the Subject Property.  In their own Motion for Summary Judgment, Plaintiffs argue that their mortgage loan was improperly transferred into JP Morgan Alternative Loan Trust 2006-S3 in violation of that trust's Pooling and Servicing Agreement.[1]  For the reasons given below, the Court finds that this case does not present any genuine issue of material fact, and Defendants are entitled to judgment as a matter of law.

I.      The Nature of MERS and its Role in this Case

Because MERS is involved in this and many other mortgage cases, the Court begins with a brief description of the nature of the business.  In 1993, a number of large participants in the mortgage industry created MERS for the purpose of tracking ownership interests in residential mortgages.  MERSCORP, Inc. v. Romaine, 8 N.Y.3d 90, 96 (2006).  More specifically, MERS was created to streamline the mortgage process by eliminating the need to record an assignment

---

[1] Plaintiffs do not connect this argument back to any particular claim contained in their original state-court petition.  For this reason alone, Plaintiffs are not entitled to complete summary judgment in their favor.

7

and deliver physical possession of a promissory note, which is the conventional method of assigning a note secured by a deed of trust.  Id.

MERS members—entities such as mortgage lenders and title companies—pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages.  Id.  MERS members also "contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system."  Id.  When a MERS member first executes a mortgage, it is recorded in the County Clerk's real property records with MERS named on the instrument as nominee or mortgagee of record.  While the mortgage is in effect, the original lender may transfer the beneficial ownership or servicing rights on the mortgage to another MERS member, with MERS tracking these electronic transfers, but those assignments are not recorded in the County Clerk's real property records.  Id.  In this way, MERS remains the nominal mortgagee of record no matter how many times the mortgage is reassigned to another MERS member.  "Through use of MERS as nominee," therefore, "lenders are relieved of the costs of recording each mortgage assignment with the County Clerk, instead paying minimal yearly membership fees to MERS."  Id. at 104 (Kaye, C.J., dissenting in part).

In accordance with the typical situation described in the previous section, the Deed of Trust in this case identifies MERS as the "beneficiary" acting "solely as nominee for Lender and Lender's successors and assigns." (MSJ, Ex. A-2.) By executing the Deed of Trust, Plaintiffs indicated that they "underst[ood] and agree[d] that MERS holds . . . legal title to the interests granted by [Plaintiffs] in this Security Instrument" and that MERS "has the right to exercise any or all of these interests" on behalf of the Lender, "including, but not limited to, the right to foreclose and sell the Property . . . ." (Id.)  In other words, the Deed of Trust indicated that MERS could exercise the rights granted to the Lender by the Deed of Trust.

II.     Notes, Deeds of Trust, and Bifurcation Theory

Underlying all of Plaintiffs' claims is the argument that Bank of America must be the owner or holder of the Note—not merely the beneficiary of the Deed of Trust—in order to foreclose on the Subject Property.  Thus, before discussing the merits of Plaintiffs' various causes of action, the Court addresses this flawed legal theory, which has been roundly rejected by both federal and state courts in Texas.  See Swim v. Bank of Am., N.A., No. 3:11-CV-1240-M, 2012 WL 170758, at *3 n.25 (N.D. Tex. Jan 20, 2012) (collecting cases).

As a preliminary matter, Texas law differentiates between enforcement of a promissory note and a deed of trust.  "Where there is a debt secured by a note, which is, in turn, secured by a lien, the lien and the note constitute separate obligations."  Aguero v. Ramirez, 70 S.W.3d 372, 374 (Tex. App. 2002).  Thus, the right to recover on the promissory note and the right to foreclose may be enforced separately.  See Stephens v. LPP Mortg., 316 S.W.3d 742, 747 (Tex. App. 2010) (finding that the promissory note and the lien that secures it are "separate legal obligations" that "may be litigated in separate lawsuits"); Carter v. Gray, 125 Tex. 219, 81 S.W.2d 647, 648 (Tex. 1935) ("It is so well settled as not to be controverted that the right to recover a personal judgment for a debt secured by a lien on land and the right to have a foreclosure of lien are severable, and a plaintiff may elect to seek a personal judgment without foreclosing the lien, and even without a waiver of the lien.").  Foreclosure is an independent action against the collateral and may be conducted without judicial supervision.  Bierwirth v. BAC Home Loans Servicing, L.P., No. 03-11-00644-CV, 2012 WL 3793190, at *4 (Tex. App. Aug. 30, 2012) (citing Reardean v. CitiMortgage, Inc., No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011)).  Enforcement of the promissory note, on the other

hand, is a personal action against the signatory and requires a judicial proceeding. Id.

"Furthermore, while a suit to recover a promissory note typically requires possession, foreclosures do not." Reardean, 2011 WL 3268307, at *4. Chapter 51 of the Texas Property Code, which governs non-judicial foreclosures, authorizes either a mortgagee or a mortgage servicer acting on behalf of a mortgagee to sell real property under a "power of sale conferred by a deed of trust." See Tex. Prop. Code. §§ 51.002, 51.0025.  The Property Code defines a "mortgagee" as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry system,[2] or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." Id. § 51.0001(4).  A mortgage servicer is "the last person to whom the mortgagor has been instructed by the current mortgagee to send payment for the debt secured by a security instrument." Id. § 51.0001(3).  A mortgagee can be its own mortgage servicer.  Id.

Here, the Deed of Trust identified MERS as "the beneficiary of this

---

[2]  A "book entry system" is defined as "a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns." Tex. Prop. Code § 51.0001(1).

Security Instrument" and nominee for lender Security National Mortgage

Company.  (MSJ, Ex. A-2.)  Quite clearly, then, MERS was a "mortgagee" as

defined in the Property Code.  See Tex. Prop. Code § 51.0001(4)(A) (defining a

"beneficiary . . . of a security instrument" as a mortgagee).  And because MERS

was a mortgagee, it was entitled to foreclose on the Subject Property on behalf of

the Lender and the Lender's successors.  See id. §§ 51.002, 51.0025.  Moreover,

the Deed of Trust itself expressly granted MERS authority "to foreclose and sell

the Property" (MSJ, Ex. A-2), and Texas courts have held that provisions granting

MERS the authority to foreclose are enforceable to the extent they are set forth in

the deed of trust.  See Bierwirth, 2012 WL 3793190, at *4; Athey v. Mortg. Elec.

Registration Serv., L.P., 314 S.W.3d 161, 166 (Tex. App. 2010).

Accordingly, if MERS validly assigned its interest to another party,

that assignee possesses the same right to foreclose on the Subject Property that

MERS had.  See Crowell v. Bexar Cnty., 351 S.W.3d 114, 118 (Tex. App. 2011)

(holding that "[a]bsent a clause limiting assignment, the deed was assignable"

where it expressly provided "that all rights under the deed inure[d] to 'the

respective successors and assigns of Lender and Grantor . . . .'"); Martins v. BAC

Home Loans Servicing, L.P., --- F.3d ----, 2013 WL 3213633, at *4 (5th Cir. June

26, 2013) ("The 'split-the-note' theory is therefore inapplicable under Texas law

where the foreclosing party is a mortgage servicer and the mortgage has been properly assigned.")  Under Texas law, therefore, Bank of America need not hold the Note in order to foreclose; it need only have the right to foreclose under the Deed of Trust.

Bank of America is the assignee of MERS' interest under the Deed of Trust in two respects.  First, because MERS assigned its interest under the Deed of Trust to "BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP," Bank of America acquired this assignment when it became successor by merger to BAC Home Loans.  Second, in December 2011, BAC Home Loans assigned its interest under the Deed of Trust to Bank of America for the benefit of JP Morgan Alternative Loan Trust 2006-S3.  Absent an infirmity in these assignments, Bank of America possessed the right to foreclose on the Subject Property pursuant to the Deed of Trust.

Moreover, Defendants have presented evidence on summary judgment that Bank of America acted as mortgage servicer for the Subject Property.  (MSJ, Exs. A, A-3–A-10, A-13, A-14.)  A mortgage servicer is "the last person to whom the mortgagor has been instructed by the current mortgagee to send payment for the debt secured by a security instrument."  Tex. Prop. Code § 51.0001(3).  Defendants submitted an October 14, 2011 letter sent to Plaintiffs which notified

them that Bank of America was successor by merger to BAC Home Loans and was the new "Mortgagee" and "Mortgage Servicer." (Id. Ex. A-9.)  The Notice of Substitute Trustee Sale and accompanying affidavit identify Bank of America as "loan servicer" for mortgagee "Bank of America, N.A., successor by merger to BAC Home Loans Servicing LP FKA Countrywide Home Loans Servicing, LP for the Benefit of JP Morgan Alternative Loan Trust 2006-S3." (Id.)  Thus, Bank of America had authority to foreclose on the Subject Property as the mortgage servicer.  See Tex. Prop. Code § 51.0025 ("A mortgage servicer may administer the foreclosure of property . . . on behalf of a mortgagee.").

III.    Plaintiffs' Challenge to the Pooling and Servicing Agreement

        Despite the facial validity of the assignments of the Deed of Trust, Plaintiffs argue, for the first time on summary judgment, that any transfer of the mortgage into J.P. Morgan Alternative Loan Trust 2006-S3, Mortgage Pass-Through Certificates (the "Trust") was "void" because it violated the terms of the Trust's Pooling and Servicing Agreement[3] ("PSA").  Plaintiffs imply that the

--------

[3] A PSA is one of a number of "complex, interrelated contracts" typically executed when a mortgage securitization trust is formed.  Chase Manhattan Mortg. Corp. v. Advanta Corp., No. Civ. A. 01-507 KAJ, 2005 WL 2234608, at *1 (D. Del. Sept. 8, 2005).  In a mortgage securitization, mortgage loans are acquired, pooled together, and then sold into a trust.  Id.  Investors can purchase an interest in the trust, and that money is used to raise funds for new mortgages.  BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assurance Corp., 673 F.3d 169,

December 2011 assignment from BAC Home Loans to Bank of America "as

Trustee for JP Morgan Alternative Loan Trust 2006-S3" is invalid because this

transferred the mortgage into the Trust in contravention of the PSA.[4]  According to

Plaintiffs, the PSA contains a provision preventing transfers into the Trust six

months after the June 1, 2006 cut-off date.  (Doc. # 23.)

   Defendants argue that Plaintiffs lack standing to challenge the

December 2011 assignment of the Deed of Trust because Plaintiffs were not parties

to that assignment.[5]  One prudential standing limitation is that plaintiffs must assert

---

173 (2d Cir. 2012).  "The terms of the securitization trusts as well as the rights,
duties, and obligations of the trustee, seller, and servicer are set forth in a [PSA]."
Id.

 [4]  The Court is not convinced that the December 2011 assignment actually
transferred the mortgage into the Trust.  In fact, the evidence suggests that the
Trust was already the "holder" of the Note when the 2011 assignments of the Deed
of Trust were executed.  Defendants maintain that the Note was timely transferred
into the Trust on June 1, 2006, as evidenced by Exhibit 1 to Schedule A of the
PSA.  (See Doc. # 33, Ex. B (listing Plaintiffs' mortgage loan ending in # 2569).)
At least one 2010 letter from BAC Home Loans, then acting as loan servicer to
Plaintiffs, indicates that the "Note holder" at the time was "Wells Fargo (jpalt
2006-S3)."  (See MSJ, Ex. A-8.)  However, for the purposes of evaluating
Plaintiffs' claim, the Court assumes arguendo that Plaintiffs' assertion that the
mortgage was transferred into the Trust in 2011 is correct.

 [5]  The Court finds that Plaintiffs satisfy the requirements of Article III
standing insofar as they possessed an interest in the Subject Property that was lost
in the foreclosure and that injury is fairly traceable to the conduct of Bank of
America in conducting the foreclosure sale and would be redressed by a favorable
decision on Plaintiffs' claims.  See Rodriguez v. Bank of Am., N.A., No.
SA–12–CV–00905–DAE, 2013 WL 1773670, at *4 (W.D. Tex. Apr. 25, 2013)

their own legal rights and interests and cannot sue to enforce the rights of third

parties.  See St. Paul Fire & Marine Ins. Co. v. Labuzan, 579 F.3d 533, 539 (5th

Cir. 2009).  The Court acknowledges that numerous courts within this circuit have

held that a plaintiff-mortgagor does not have standing to assert claims on the basis

of an allegedly invalid assignment to which he or she was not a party.  See, e.g.,

DeFranceschi v. Wells Fargo Bank, N.A., 837 F. Supp. 2d 616, 623 (N.D. Tex.

2011).  Other courts, including this one, have held that a plaintiff has standing to

challenge a mortgage assignment on any ground that would render the assignment

"void," rather than "voidable" at the election of the parties to the assignment.  See

Saucedo v. Deutsche Bank Nat'l Trust Co., SA-12-CV-868-DAE, 2013 WL

656240, at *4 (W.D. Tex. Feb. 20, 2013).

        Aware of this Court's distinction between void and voidable

assignments, Plaintiffs contend that they have standing to challenge the assignment

of their mortgage to the Trust because, under New York trust law,[6] any transfer in

violation of the PSA would render the assignment void.  However, Plaintiffs'

_____

(citing Pizzini v. Bank of Am., Civ. A. No. SA-12-CV-308-XR, 2012 WL
1834052, *4 (W.D. Tex. May 18, 2012)).

    [6] The PSA contains a choice of law provision stating that "THIS
AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE
LAWS OF THE STATE OF NEW YORK . . ."  (Doc. # 23-1 at § 12.06
"Governing Law.")  There is no dispute that New York law governs the agreement.

argument fails for two reasons.

First, this Court recently held that the transfer of a mortgage loan into a mortgage pool trust, even if done in violation of the terms of the trust's PSA, would merely be voidable at the election of one or more of the parties to the transaction—not void.  See Calderon v. Bank of Am. N.A., --- F. Supp. 2d ----, 2013 WL 1741951, at *11 (W.D. Tex. Apr. 23, 2013).  The Court reasoned that, because New York law permits a beneficiary to ratify a trustee's ultra vires transactions, "such transactions are, accordingly, voidable."  Id. at *12.

Second, and more importantly, the Fifth Circuit, in a recent published opinion, made clear that courts need not examine New York trust law to determine whether plaintiff-mortgagors have standing to challenge the assignment of their mortgage to a mortgage pool trust.  See Reinagel v. Deutsche Bank Nat'l Trust Co., No. 12-50569, --- F.3d ----, 2013 WL 3480207 (5th Cir. July 11, 2013).  First, the Reinagel court affirmed the void/voidable distinction, finding plaintiff-mortgagors have standing under Texas law to assert claims "on any ground which renders the [mortgage] assignment void."  Id. at *3 (citing Tri-Cities Constr., Inc. v. Am. Nat'l Ins. Co., 523 S.W.2d 426, 430 (Tex. Civ. App. 1975)).  The court then explained that, as a matter of Texas law, plaintiffs only have standing to litigate the terms of a PSA if they are third-party beneficiaries of that

17

contract.  See id. at *5 (citing Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc., 348 S.W.3d 894, 900 (Tex. 2011)).  The Fifth Circuit held that, even assuming the plaintiff-mortgagors were third-party beneficiaries of the PSA, "the fact that the assignments violated the PSA—a separate contract—would not render the assignments void, but merely entitle [plaintiffs] to sue for breach of the PSA." Id. (emphasis added).  In other words, while plaintiff-mortgagors may sue for breach of a PSA as third-party beneficiaries of that contract, they cannot use allegations of such a breach as a basis to contest an otherwise valid mortgage assignment.  Accordingly, plaintiff-mortgagors lack standing to challenge an assignment of their mortgage to a mortgage pool trust based on alleged violations of the trust's PSA.  See id.

Here, Plaintiffs contest the assignment of their mortgage to Bank of America for the benefit of JP Morgan Alternative Loan Trust 2006-S3 based on an alleged breach of the Trust's PSA.  As Reinagel makes clear, Plaintiffs lack standing to do so.  Plaintiffs' challenge to the 2011 assignment of the Deed of Trust, therefore, fails.

IV.   Plaintiffs' Remaining Causes of Action

Plaintiffs' cross-motion for summary judgment essentially contains one argument—namely, that the 2011 assignment of the Deed of Trust to Bank of

18

America for the benefit of JP Morgan Alternative Loan Trust 2006-S3 is invalid because it violates the Trust's PSA.  Plaintiffs do not connect this argument back to any particular claim contained in their original state-court petition.  Thus, it is unclear whether Plaintiffs have abandoned a majority of their claims.  However, in an abundance of caution, the Court addresses each cause of action below and finds that Defendants are entitled to judgment as a matter of law as to each.

     A.   <u>Wrongful Foreclosure</u>

     Under Texas common law, a debtor may recover for wrongful foreclosure when the party has suffered a loss or injury due to inconsistencies or irregularities in the foreclosure process.  <u>See</u> <u>Wieler v. United Sav. Ass'n of Tex.</u>, 887 S.W.2d 155, 158 (Tex. App. 1994).  The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." <u>Sauceda v. GMAC Mortg. Corp.</u>, 268 S.W.3d 135, 139 (Tex. App. 2008); <u>accord</u> <u>Pollett v. Aurora Loan Servs.</u>, 455 F. App'x 413, 415 (5th Cir. 2011).

     Plaintiffs bring a common-law wrongful foreclosure claim predicated on the allegation that "[a] foreclosure action is a collection on the Original Promissory Note, not on the Deed of Trust."  (Doc. # 1, Ex. A ¶ 20.)  Plaintiffs also allege that notice of foreclosure was "defective and invalid because [the notice]

19

describes the original mortgagee as MERS."  (Id. ¶ 22.)  As such, they contend that any notice of default or acceleration was ineffective and the foreclosure sale was therefore invalid.  (Id.)

The Court has already explained above the legal difference between enforcement of the Note and enforcement of the Deed of Trust.  In this case, Bank of America instituted a non-judicial foreclosure; thus, it enforced the Deed of Trust.  Additionally, the Court has already explained why MERS was indeed a mortgagee under the original Deed of Trust; therefore, such a representation on a notice of foreclosure would not have been incorrect.  Moreover, Defendants have presented evidence on summary judgment that Plaintiffs were given notice of default and of the foreclosure sale, and Plaintiffs do not deny receiving such notice.  (See MSJ, Exs. A-6, A-8–A-14.)

To the extent that Plaintiffs also base their wrongful foreclosure claim on allegations that Bank of America failed to respond to their Qualified Written Request ("QWR") under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617, this argument fails.[7]  (See Doc. # 1, Ex. A ¶ 25.)  Plaintiffs allegedly requested that Bank of America produce "all documents establishing

---

[7]  The state-court petition does not bring an independent cause of action under RESPA, but rather uses an alleged RESPA violation as the basis for Plaintiffs' wrongful foreclosure claim.  (See Doc. # 1, Ex. A ¶ 25.)

a/the chain of transfer/assignment" of the mortgage loan and also "produce the

Original Note." (Id.)  These requests were purportedly to verify that Bank of

America was the "holder" of the Note.  Plaintiffs argue that because Bank of

America did not comply with RESPA, it did not adequately prove its authority to

foreclose on the Subject Property.  (Id.)

However, as explained above, the Texas Property Code governs non-

judicial foreclosure sales, and the Code does not require production of the original

Note.  See Martins, 2013 WL 3213633, at *3–4.  "The mortgage servicer need only

provide notice of default, with an opportunity to cure, and notice of the actual

foreclosure sale."  Reardean, 2011 WL 3268307 at *4 (citing Tex. Prop. Code

§ 51.002(b), (d)).  Section 2605 of RESPA, on the other hand, requires a loan

servicer to provide a written response to a borrower's QWR.  12 U.S.C. § 2605(e).[8]

---

[8] The RESPA request must be: (1) a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer; (2) that includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (3) that includes a statement of the reasons for the borrower's belief, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.  12 U.S.C. § 2605(e)(1)(B).  Not later than 30 days after receipt of a "qualified written request" from the borrower, the servicer must, inter alia, conduct an investigation and provide the borrower with: (1) a written explanation of why the servicer believes the account information is correct; and (2) the name and telephone number of someone employed by the servicer who can provide assistance to the borrower.  Id. § 2605(e)(2)(B).

Plaintiffs have offered no evidence on summary judgment that any such request was made.  However, even if Plaintiffs could establish a RESPA violation, the sending of a QWR would not constitute a "defect in the foreclosure sale proceedings" if Plaintiffs were sent the appropriate notices of foreclosure under the Deed of Trust and the Texas Property Code.  Section 2615 of RESPA provides that:

> Nothing in this chapter shall affect the validity or enforceability of any sale or contract for the sale of real property or any loan, loan agreement, mortgage, or lien made or arising in connection with a federally related mortgage loan.

12. U.S.C. § 2615.  The Texas Property Code, and not RESPA, governs the notice requirements for foreclosure proceedings in the state of Texas.  Thus, the alleged RESPA violation in this case cannot provide a basis for Plaintiffs' wrongful foreclosure claim.

Finally, the Court notes that recovery for wrongful foreclosure is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be an inadequate selling price resulting from the defect." Biggers v. BAC Home Loans Servicing, LP, 767 F. Supp. 2d 725, 729 (N.D. Tex. 2011).  Plaintiffs have offered no evidence on summary judgment, and made no factual allegations in the state-court petition, to indicate that the selling price was

inadequate in this case.  For all these reasons, Defendants are entitled to judgment as a matter of law on Plaintiffs' wrongful foreclosure claim.

      B.    <u>Texas Property Code Violation</u>

      Plaintiffs' state-court petition states that Bank of America has "<u>failed to give proper notice</u> because all transfers of the lien were not recorded timely as required by Texas law prior to the acceleration and collection action on the Note." (Doc. # 1, Ex. A ¶ 26.)  Plaintiffs do not cite any provision of the Texas Property Code or any other authority in support of this proposition.

      Several federal courts in Texas have found that no legal ground exists for wrongful foreclosure based on a failure to record a mortgage assignment in the real property records.  <u>See, e.g.</u>, <u>Bittinger v. Wells Fargo Bank NA</u>, 744 F. Supp. 2d 619, 625 (S.D. Tex. 2010).  Additionally, the fact that a mortgage assignment was not recorded would not render the assignment unenforceable.  The Texas Property Code expressly states that an "unrecorded instrument is binding on a party to the instrument."  Tex. Prop. Code § 13.001(b); <u>see also</u> <u>id.</u> § 51.0001(4) (recognizing that recordation of assignment is one of several methods of establishing status as mortgagee); <u>Broyles v. Chase Home Fin.</u>, No. 3:10–CV–2256–G, 2011 WL 1428904, at *2 (N.D. Tex. Apr. 13, 2011) (finding that assignments need not be recorded and noting that "Texas courts have

23

consistently held that recordation is not necessary for liens, deeds, or deeds of trust to be enforceable against the parties to those instruments"). "The recordation of an assignment puts third parties on notice of the assignment, but the recordation itself does not affect the validity of the transfer of interest." Green v. JPMorgan Chase Bank, N.A., --- F. Supp. 2d ----, 2013 WL 1406012, at *4 (N.D. Tex. Feb. 12, 2013) (citation omitted).

Here, the record indicates that Plaintiffs were on notice of the assignment of their mortgage. The original assignment from MERS to BAC Home Loans took place on May 2, 2011. (MSJ, Ex. A-5.) On December 1, 2011, the Deed of Trust was assigned by BAC Home Loans to Bank of America "for the benefit of JP Morgan Alternative Loan Trust 2006-S3." (Id. Ex. A-7.) This particular assignment was not recorded until March 15, 2012, admittedly after the February 7, 2012 foreclosure sale of the Subject Property. (See id. Exs. A-7, A-12.) However, in an October 14, 2011 letter notifying Plaintiffs of the acceleration of their mortgage debt, Bank of America explained that it was successor by merger to BAC Home Loan Servicing, LP and described itself as the new "Mortgagee" and "Mortgage Servicer." (Id. Ex. A-9.) Additionally, the January 17, 2012 Notice of Substitute Trustee's Sale for the Subject Property lists Bank of America as the "Mortgagee of the Note and Deed of Trust" as well as the "Mortgage

Servicer."  (Id.)  Thus, Plaintiffs were on notice that Bank of America had become the mortgagee and mortgage servicer even though the assignment of the Deed of Trust had not yet been recorded.  Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiffs' claim for a violation of the Texas Property Code.

       C.    <u>Texas Business and Commerce Code Violation</u>

Although Plaintiffs' state-court petition does not identify a particular provision of the Texas Business & Commerce Code that Bank of America violated, their sole argument is that Bank of America improperly foreclosed on the Subject Property because Bank of America was not the "holder" of the Note at the time of foreclosure.  (Doc. # 1, Ex. A ¶ 27.)

As explained above, Bank of America need not be the "holder" of the original Note in order to institute a non-judicial foreclosure.  Moreover, in this case, the evidence shows that Bank of America had authority to foreclose on the Subject Property as the mortgagee and mortgage servicer.  Thus, the Court grants Defendants summary judgment on this claim.

       D.    <u>Texas Debt Collection Act</u>

Plaintiffs contend that, because Bank of America was not the "holder" of the Note, it had "no authority to collect on the Note" and the foreclosure sale

therefore violated the Texas Debt Collection Act's prohibition on "fraudulent, deceptive, and/or misleading representations."  (Doc. # 1, Ex. A ¶ 28.)  This claim fails because, as explained numerous times above, Bank of America need not be the "holder" of the Note in order to institute a non-judicial foreclosure and the evidence shows that Bank of America had authority to foreclose on the Subject Property.

      E.     <u>Quiet Title</u>

      A suit to quiet title is an equitable action in which the plaintiff seeks to remove from his title a cloud created by an allegedly invalid claim.  <u>Florey v. Estate of McConnell</u>, 212 S.W.3d 439, 448 (Tex. App. 2006).  A "cloud" on legal title includes any deed, contract, judgment lien or other instrument, not void on its face, that purports to convey an interest in or makes any charge upon the land of the true owner, the invalidity of which would require proof.  <u>Wright v. Matthews</u>, 26 S.W.3d 575, 578 (Tex. App. 2000).  To bring a quiet title claim, a plaintiff must show: (1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable.  <u>U.S. Nat'l Bank Ass'n v. Johnson</u>, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App. Dec. 30, 2011) (citing <u>Sadler v. Duvall</u>, 815 S.W.2d 285, 293 n.2 (Tex. App. 1991)).

Again, for the reasons given above, Plaintiffs have not presented sufficient evidence to create a genuine issue of material fact concerning the validity the assignments of the Deed of Trust in this case.  Accordingly, the Court grants Defendants summary judgment on this claim.

F.    Declaratory Judgment

Plaintiffs seek a declaratory judgment that Bank of America "must produce the Original Promissory Note . . . for inspection by the Plaintiffs . . . prior to proceeding with any foreclosure proceedings."  (Doc. # 1, Ex A § 30.)  This is an odd request given that Plaintiffs admit, and there is evidence in the record to support, that a foreclosure sale of Subject Property has already taken place.  Thus, Plaintiffs' claim is moot in light of the foreclosure sale.

Additionally, the Fifth Circuit has recently held that "Texas recognizes assignment of mortgages through MERS and its equivalents as valid and enforceable without production of the original, signed note."  Martins, 2013 WL 3213633, at *2.  Plaintiffs are therefore not entitled to a declaration that Bank of America must produce the original Note for their inspection.

Finally, to be entitled to declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, a plaintiff must allege facts

demonstrating that there exists "a substantial and continuing controversy between the two adverse parties." Bauer v. Texas, 341 F.3d 352, 358 (5th Cir. 2003). For the reasons explained above, there is no "substantial and continuing controversy" regarding Bank of America's ability to foreclose on the Subject Property. Thus, the Court grants Defendants summary judgment on this claim.

G.     Injunctive Relief

Plaintiffs' request for a "temporary injunction" also fails. (See Doc. # 1, Ex. A ¶ 36.) To obtain a preliminary injunction, a plaintiff must demonstrate:

> (1) a substantial likelihood of success on the merits of the movant's claims; (2) a substantial threat that movant will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs any harm that the other party might suffer if the injunction is entered; and (4) an injunction will not disserve the public interest.

Anderson v. Jackson, 556 F.3d 351, 360 (5th Cir. 2009) (citing Canal Auth. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974)). Injunctive relief is "an extraordinary and drastic remedy"; it should only be granted when the movant has clearly carried the burden of persuasion. Anderson, 556 F.3d at 360 (citing Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 997 (5th Cir. 1985)).

For the reasons given many times in this Order, Plaintiffs' claims all fail. Injunctive relief is, accordingly, inappropriate.

28

CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (doc. # 3) and **DENIES** Plaintiffs' Motion for Summary Judgment (doc. # 23).  Because Plaintiffs make no separate allegations against Defendant Security National Mortgage Company, their claims fail against that entity for the same reasons described above and are dismissed.  Accordingly, this action is DISMISSED.

IT IS SO ORDERED.

DATED: San Antonio, Texas, August 6, 2013.

_____
David Alan Ezra
Senior United States District Judge